UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ENERGY CONVERSION DEVICES LIQUIDATION TRUST, BY AND THROUGH ITS LIQUIDATING TRUSTEE, JOHN MADDEN, | ) ) ) ) ) Civil Action No. 2:13-CV-14241-RHC-RSW |
| Plaintiff, | ) ) |
| v. | ) **JURY TRIAL DEMANDED** ) ) |
| TRINA SOLAR LIMITED, et al. | ) ) |
| Defendants. | ) |

**PLAINTIFF'S MOTION TO TRANSFER VENUE TO
THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

Pursuant to 28 U.S.C. § 1404 Plaintiff Energy Conversion Devices Liquidation Trust, by and through its attorneys, respectfully request that the Court transfer this case to the United States District Court for the Northern District of California, Oakland Division. In support thereof, Plaintiff submits the attached Memorandum of Law.

Dated: April 17, 2014            Respectfully submitted,

ENERGY CONVERSION DEVICES LIQUIDATION TRUST

By: */s/ W. Gordon Dobie*

W. Gordon Dobie
wdobie@winston.com
Derek J. Sarafa (P#57088)
dsarafa@winston.com
William C. O'Neil
woneil@winston.com
Edward L. Foote
efoote@winston.com
WINSTON & STRAWN LLP

35 West Wacker Drive
Chicago, IL 60601
Telephone: 312-558-5600
Facsimile: 312-558-5700

Robert B. Pringle
rpringle@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111
Telephone: 415-591-1000
Facsimile: 415-591-1400
rpringle@winston.com

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| ENERGY CONVERSION DEVICES LIQUIDATION TRUST, BY AND THROUGH ITS LIQUIDATING TRUSTEE, JOHN MADDEN, <br><br>         Plaintiff, <br><br> v. <br><br> TRINA SOLAR LIMITED, et al. <br><br>         Defendants. | Civil Action No. 2:13-CV-14241-RHC-RSW <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

Through this motion, ECD seeks to transfer this action to the Northern District of California, Oakland Division pursuant to 28 U.S.C. § 1404. A transfer serves the interest of justice and the convenience of the parties given that related and earlier-filed litigation is pending in that district, Defendants' U.S.-based subsidiaries are headquartered there, and the parties' witnesses are likely to be located and deposed there. In fact, this action is nearly identical to the action already pending in California that is currently proceeding through discovery—the defendants and their lead lawyers are identical in both actions. Moreover, both actions arise out of the same conduct—defendants' conspiracy to sell solar panels in the American market at artificially low prices in violation of the Sherman Antitrust Act and pendant state law claims. Defendants' scheme was intended to, and succeeded in, effectively destroying American solar manufacturers, including ECD.

Given the similarities between the two cases, it is likely that the relevant witnesses, documents, and evidence will be the very similar, if not identical, in both cases. And many of those witnesses are likely to reside in California—the site of Defendants' U.S. offices. Discovery is already underway in the related litigation pending in California and Defendants' witnesses are likely to be deposed in that case in the near future. Because so many of the issues overlap, it would be most convenient for these witnesses to have their deposition taken just once, rather than be deposed once in the California litigation and then later in this action.

Despite these very real conveniences to Defendants, Plaintiff ECD is also cognizant of the fact that the Solyndra case is further along, that the court there is familiar with the issues, that judicial resources may be preserved by having the same court deal with both cases, and that hopefully the matter may be handled more expeditiously in the Northern District of California— the goal of ECD, which is in bankruptcy liquidation. Further, since Defendants destroyed ECD,

its employees have scattered around the country and are unlikely to be concentrated in one state, and its its liquidating trustee resides in New York.

Accordingly, ECD respectfully requests that the Court transfer this case to the Northern District of California.

## BACKGROUND

### A. Solyndra Litigation

On October 11, 2012, the Solyndra Residual Trust filed suit against three Chinese-based solar manufacturers and their U.S.-based subsidiaries, Suntech Power Holdings Co., Ltd., Suntech America, Inc., Trina Solar Limited, Trina Solar (U.S.), Inc., Yingli Green Energy Holding Company Limited, and Yingli Green Energy Americas, Inc. (collectively, "Defendants") in the Northern District of California (the "Solyndra Litigation").  Solyndra alleges violations of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, as well as pendant state law antitrust and other anticompetitive claims.  Solyndra also alleges that Defendants combined and conspired together, with the aid of their co-conspirators such as the China New Energy Chamber of Commerce, to fix prices for solar panels in the United States at artificially low, below-cost prices in order to eliminate competition in the form of Solyndra, Energy Conversion Devices, and other American solar manufacturers.  ((*See Solyndra v. Suntech Power Holdings Co., Ltd.*, 12-cv-05272 (N.D. Cal. 2012), DKT NO. 70 at ¶¶ 1, 86-97, 171 ("Solyndra Am. Compl.").)  Solyndra's claims are buttressed by the Department of Commerce ("DOC") and International Trade Commission ("ITC") findings that Defendants dumped solar panels on the United States market at below-cost prices and to the detriment of American businesses, such as Solyndra and Energy Conversion Devices.  (*See id.* ¶¶ 124-152.)

Prior to filing its amended complaint, Solyndra issued discovery requests to Defendants directed specifically to the submissions made to, and the findings of, the DOC and ITC.  Plaintiff

has defeated Defendants' motion to prevent such discovery and they have already produced 66,000 pages of documents confirming Solyndra and ECD's allegations—Defendants sold solar panels below their costs in violation of US law. Solyndra has served multiple additional document requests on Defendants and is currently awaiting additional productions from Defendants at the end of the month.

### B. ECD Litigation

Later in 2013, ECD filed suit against the same defendants as in the Solyndra Litigation (the "ECD Litigation"). ECD's claims mirror the claims made in the Solyndra Litigation, namely that Defendants combined and conspired with each other, and with the aid of their co-conspirators such as the China New Energy Chamber of Commerce, to sell solar panels at artificially low prices in order to eliminate ECD, Solyndra and other American competition in violation of Section 1 of the Sherman Antitrust Act. (*See ECD v. Trina Solar Limited*, 13-cv-14241 (E.D. Mich. 2013) DKT NO. 1 ("ECD Compl.") ¶¶ 1, 63-74, 82-84, 87-89.) For the same reasons that Defendants' conduct violated the Sherman Act, ECD alleges that their conduct violates the Michigan Antitrust Reform Act, a state law equivalent of the Sherman Act. (*Id.* ¶¶ 90-98.) In other words, the factual bases underlying the claims in the ECD Litigation echo those in the Solyndra Action. (*Compare* ECD Complaint ¶¶ 45- 84, Exhibit A *with* Solyndra Complaint ¶¶ 74-183.)

### C. Parties

Solyndra was based in Fremont, California, a suburb of Oakland. (*See* Solyndra Am. Compl. ¶ 12.) It manufactured its solar panels in California, shipped its solar panels from there, and generally managed its business in California. (*Id.*) Solyndra contracted with customers throughout the United States, and the world. (*See e.g.*, *id.* ¶¶ 71-73, 186.)

Although ECD was headquartered in Auburn Hills, Michigan, it maintained a subsidiary in Los Angeles from where ECD sold its products. (*See* ECD Compl. ¶ 15.) Further, nearly all of ECD's solar panels were shipped from San Diego.

Defendants all have a substantial presence in the Northern District of California. (*See* ECD Compl. ¶¶ 17-22.) For example, the Defendants used their U.S.-based subsidiaries (Suntech America, Inc., Trina Solar (U.S.), Inc., and Yingli Green Energy Americas, Inc.) to dump solar panels in the American market. Suntech America, Inc. is based in San Francisco and Yingli Green Energy Americas, Inc. has its principal place of business and is headquartered there. (*Id.* ¶¶ 20, 22.) Trina Solar (U.S.) has its principal place of business in San Jose, about an hour away from San Francisco. (*Id.* ¶ 18.) All three of these companies conducted substantial operations in the Northern District of California in furtherance of Defendants' illegal conspiracy. (*See id.* ¶¶ 17-22.) The Defendant parent companies (Suntech Power Holdings Co., Ltd., Trina Solar Limited, and Yingli Green Energy Holdings Company Limited) exercise substantial control over these U.S.-based subsidiaries which exist as the alter egos of the parent companies. (*See id.*) Moreover, more solar panels are sold in California than in any other state in the United States. California leads the country in installed solar capacity (2,745.8 megawatts installed—nearly 400 percent more than Arizona, the next highest state) and solar jobs, with approximately 47,100. (*See* Solar Energy Industries Association, *2013 Top 10 Solar States* (available at http://www.seia.org/research-resources/2013-top-10-solar-states).) In fact, California is so far ahead of the remaining states in the solar industry that it has more installed capacity and more solar jobs than the rest of the top ten states *combined*. (*See id.*)

On April 16, 2014, counsel for ECD met and conferred with counsel for Defendants regarding the content of this motion and Defendants' counsel stated that they would oppose the

motion.

## LEGAL STANDARD

Under 28 U.S.C. § 1404, transfer of a pending civil action is proper where: "(1) the action could have been brought in the transferee district court; (2) a transfer serves the interests of justice; and (3) transfer is in the convenience of the witnesses and parties." *Central Transport Int'l, Inc. v. Alcoa, Inc.*, No. 06-cv-11913, 2006 WL 2844171, at *2 (E.D. Mich. Sept. 29, 2006) (Cleland, J.). Once the proposed transferee venue is found to be proper, the court must then consider whether a transfer would promote the interest of justice and serve the convenience of the parties and potential witnesses. Section 1404 is "'intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" *Applied Energy Techs., Inc. v. Solar Liberty Energy Systems, Inc.*, No. 09-cv-11959, 2009 WL 2777079, at *4 (E.D. Mich. Aug. 27, 2009) (Cleland, J.) (citing *Stewart Org., Inc. v. Rioch Corp.*, 487 U.S. 22, 29 (1988).) To undertake such consideration, courts generally consider the following factors: (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000). "A district court has broad discretion to grant or deny a motion to transfer [a] case." *Applied Energy*, 2009 WL 2777079, at *4.

# ARGUMENT

## A.     Venue in Proper in the Northern District of California.

Venue is proper in the Northern District of California because (i) Defendants reside there (28 U.S.C. § 1391(b)(1)); (ii) a substantial part of the events giving rise to the claim occurred there (28 U.S.C. § 1391(b)(2)); and (iii) all Defendants are subject to personal jurisdiction there (28 U.S.C. § 1393(b)(3)).  Defendants all reside in the Northern District of California because they have their principal places of business there and/or because that court has personal jurisdiction over them.  *See* 28 U.S.C. § 1391(c)(2) ("For all venue purposes . . . an entity with the capacity to sue and be sued . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction . . . .").[1]

Further, a substantial portion of the events giving rise to the claims in the ECD Litigation occurred in the Northern District of California.  Defendants used their alter-ego U.S.-based subsidiaries to dump solar panels at artificially low prices in the American market pursuant to their agreement.  (ECD Compl. ¶¶ 17-22.)  In other words, the Northern District of California was the "port of entry" for Defendants' illegal conspiracy.  *See RSI Video Techs., Inc. v. Vacant Property Security, LLC*, No. 13-cv-00170, 2013 WL 5530619, at * (S.D. Tex. Oct. 4, 2013) (finding venue proper in Northern District of Illinois for transfer purposes when importation of allegedly infringing goods occurred there).[2]

---

[1] Further, Defendants never contested the personal jurisdiction of the Northern District of California in the Solyndra Litigation.  (*See Solyndra v. Suntech Power Holdings Co., Ltd.*, 12-cv-05272 (N.D. Cal. 2012) DKT NO. 76.)  Because the ECD and Solyndra Litigations are related, involve nearly identical claims and arise from the same basic facts, there is no basis for Defendants to contest personal jurisdiction in the ECD Litigation.

[2] Even if the parent company Defendants (Suntech Power Holdings Co., Ltd., Trina Solar Limited, and Yingli Green Energy Holdings Company Limited) are not found to be residents of the Northern District of California, they may still be subject to venue in there under Section 1391(c)(3) which allows for non-resident defendants to be sued in "any judicial district." 28 U.S.C. § 1391(c)(3); *see also RSI Video Techs., Inc. v. Vacant Property Sec., LLC*, No. 13-cv-00170, 2013 WL 5530619 (S.D. Tex. Oct. 4, 2013);

Venue is also proper in the Northern District of California under 15 U.S.C. § 22 which provides that any antitrust action against a corporation may be brought where "it is an inhabitant" or "in any district wherein it may be found or transacts business." 15 U.S.C. § 22. Because Defendants may all be found in the Northern District of California and because they all transact business there (*see* ECD Compl. ¶¶ 17-22), venue is also proper in the Northern District of California under this provision.

> **B.     The Interests of Justice and Convenience of the Parties and Witnesses Favor Transfer to the Northern District of California.**

Not only is venue proper in the Northern District of California, the interests of justice and the convenience of the parties and witnesses favor transfer to that court.  There is litigation already pending in the Northern District of California where discovery is already well underway, including the production of tens of thousands of page of documents which should also be used in ECD's case. Moreover, Defendants' U.S.-based subsidiaries, and likely most of Defendants' witnesses, are all located in that district.  The parties have retained counsel admitted to practice in that district and all counsel have offices there.  In short, the balance of factors favor a transfer to the Northern District of California, Oakland Division.

*Trial Efficiency and the Interests of Justice.*  The Solyndra Litigation, currently pending in California, involves parallel allegations to those presented by ECD in this Court.  In particular, both cases allege that Defendants conspired and combined together to restrain trade in violation of Section 1 of the Sherman Act.  (*See* ECD Compl. ¶¶ 87-89; Solyndra Compl. ¶¶ 218-227.) Moreover, both cases involve pendant claims of state law that mirror the federal antitrust allegations.  Courts have uniformly granted transfer in such situations. *See, e.g.*, *Integrated*

---

*High Tech Pet Prods., Inc. v. Juxin Pet Prod. Co.*, 10-cv-00547, 2013 WL 1281619 (E.D. Cal. Mar. 27, 2013).

*Mgmt. Sys., Inc. v. Maity*, No. 11-14382, 2012 WL 162282, *9 (E.D. Mich. Jan. 19, 2012) (granting transfer in related action because "[p]arty and judicial resources would be needlessly wasted" by allowing the actions to proceed in separate venues); *Wayne Cty. Employees' Retirement Sys. v. MGIC Inv. Corp.*, 604 F. Supp. 2d 969, 977 (E.D. Mich. 2009) (granting transfer where four other similar class actions against the same defendants were pending in a different district); *Detroit Coke Corp. v. NKK Chem. USA, Inc.*, 794 F. Supp. 214, 219 (E.D. Mich. 1992) (granting transfer where same parties were already involved in state court action pending within the boundaries of another federal district); *Roth v. Bank of the Commonwealth*, No. 6-71531, 1978 WL 1133, *3 (E.D. Mich. Dec. 11, 1978) (granting transfer where similar case—involving different plaintiffs but the same issues and nearly the same defendants—was already pending in another district); *Talent Tree Crystal, Inc. v. DRG, Inc.*, No. 1:04-cv-875, 2005 WL 3312554, *5 (W.D. Mich. Dec. 7, 2005) (granting transfer where the parties were involved in another lawsuit pending in a different district regarding the same subject matter).

To transfer the ECD Litigation to the Northern District of California, where the Solyndra Litigation is already pending, would "avoid a multiplicity of litigation [and avoid] 'the wastefulness of time, energy, and money that § 1404(a) was designed to prevent.'" *United States v. Kunkle*, 05-cv-561, 2006 WL 416259, at *3 (W.D. Mich. Feb. 22, 2006) (quoting *Continental Grain Co. v. the Barge FBL-585*, 364 U.S. 19, 26 (1960).) Not only is the Solyndra Litigation pending in the Northern District of California, the parties have already engaged in extensive discovery and motion practice in that action. For example, the parties were before the court in that action over a year ago on a motion to compel the production of documents by Plaintiff Solyndra. (*See Solyndra v. Suntech Power Holdings Co., Ltd.*, 12-cv-05272 (N.D. Cal. 2012) DKT NO. 25.) As a result of Solyndra winning that motion to compel, Defendants have already

produced over 66,000 pages of documents. Plaintiff has issued multiple document requests to Defendants in that action as well and is currently awaiting their additional document productions.[3] The Solyndra Litigation, as the first-filed action and one advanced far beyond the ECD Litigation, has "priority" and thus the ECD Litigation should be transferred to the Northern District of California. *See Carson Real Estate Cos. v. Constar Group, Inc.*, No. 10-cv-13966, 2011 WL 4360017, at *9 (E.D. Mich. Sep. 19, 2011) ("Although not conclusive, when two courts have concurrent jurisdiction over a dispute involving the same parties and issues, as a general proposition the forum in which the first-filed action is lodged has priority." (internal quotations omitted).)

*Convenience of the Witnesses.* In the instant case, the witnesses are likely to be the employees, or former employees, of ECD and Defendants. Since ECD has entered bankruptcy, it its liquidating trustee resides in New York. Likewise, ECD's salespeople and former employees have likely dispersed throughout the country after ECD's demise. However, because Defendants are all located in California, most of Defendants' witnesses are likely to be there. As such, Defendants' witnesses would not be significantly inconvenienced by having this action transferred to California. To the extent that any witnesses are located outside of California, including Plaintiff's own witnesses, it is no more burdensome for them to travel to California than to Michigan. *See Speedshape, Inc. v. Meechan*, No. 11-14670, 2012 WL 1672979, at *2 (E.D. Mich. May 14, 2014) (weighing "convenience of witnesses" factor in favor of transfer when it was "likely" that more witnesses were present in California, even though there were some employees of plaintiff in Michigan). Further, to the extent that Chinese-based employees of Defendants will need to travel to the United States for this action, it is measurably less

---

[3] ECD anticipates that most, if not all, of the documents that are relevant to its claims against Defendants will also be relevant to Solyndra's claims against Defendants, and vice versa.

burdensome for them to travel to California than to Michigan. There are approximately a dozen flights daily from Beijing to San Francisco, including two non-stop flights. In contrast, there appear to be less than a handful of flights from Beijing to Detroit. *See Tuna Processors, Inc. v. Hawaii Intern. Seafood, Inc.*, 408 F. Supp. 2d 358, 361 (E.D. Mich. 2005).

In addition, transferring this case to the Northern District of California would further the convenience of witnesses as many witnesses who will be deposed in the Solyndra Litigation will likely have testimony relevant to the ECD Litigation. The reverse is also true: many of the witnesses who will be deposed in this action will likely have testimony relevant to the Solyndra Litigation. Transferring the ECD Litigation to the Northern District of California will allow the parties to best coordinate the depositions of potential witnesses and avoid multiplicity of depositions of the same witnesses on the same subject matter.

*Convenience of the Parties.* Transferring this case to the Northern District of California would further convenience the parties to this action. In particular, Defendants already have a substantial presence in California and, in fact, the U.S.-based Defendants are all located within an hour of the Oakland courthouse. Further, the parties have already retained counsel in the Solyndra Litigation, all of whom have offices in the Northern District of California, while none have offices in Michigan.

*Additional Factors.* The remaining factors in the transfer analysis are likely to be neutral. For example, given that the relevant documents and sources of proof will consist primarily, if not entirely, of documentary evidence, the location of relevant documents and ease of access to source of proof is a "minor consideration." *See Converting Alternatives*, 2007 WL 851003, at *9. Further, "due to advance in technology," it is simply not burdensome to produce documents in any given forum. *See Coupled Prod., LLC v. Component Bar Prod., Inc.*, 2010

WL 1141611, at *5. Further, the locus of operative facts is likely to have occurred around the country. It is likely that in either California or Michigan, some witnesses, although not those under control of the parties, would remain outside the subpoena power of the Court. As such, the availability of process to compel attendance of unwilling witnesses is likely to be a neutral factor. All parties are relatively sophisticated entities, and although ECD is now bankrupt, it does not anticipate any issues with litigating this action in the Northern District of California. Further, Defendants have revenues in the billions of dollars and can surely litigate this case there. Therefore, the relative means of the parties is likely to be a neutral factor. Finally, the forum's familiarity with governing law is another neutral factor because "both the [potential transferee district] and this district are equally able to familiarize themselves with the governing law." *Howe v. DCC Litig. Facility, Inc.*, No. 06-13793, 2008 WL 880520, at *4 (E.D. Mich. Mar. 31, 2008).

On balance, the factors are either neutral or favor a transfer of this action to the Northern District of California. There is not a single factor that mitigates against transferring this action.

## CONCLUSION

For the foregoing reasons, Plaintiff ECD respectfully requests that the Court transfer this action to the Northern District of California, Oakland Division.


Dated: April 17, 2014            Respectfully submitted,

                                 ENERGY CONVERSION DEVICES LIQUIDATION
                                 TRUST

                                 By: */s/ W. Gordon Dobie*

                                 W. Gordon Dobie
                                 wdobie@winston.com
                                 Derek J. Sarafa (P#57088)

dsarafa@winston.com
William C. O'Neil
woneil@winston.com
Edward L. Foote
efoote@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Telephone: 312-558-5600
Facsimile: 312-558-5700

Robert B. Pringle
rpringle@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111
Telephone: 415-591-1000
Facsimile: 415-591-1400
rpringle@winston.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17 day of April, 2014, a copy of the foregoing was delivered via U.S. Mail and ECF to the following:

>Leonid E. Feller
>Kirkland & Ellis LLP
>300 N. LaSalle
>Chicago, IL 60654
>(312) 862-2198
>Leonid.feller@kirkland.com
>
>Matthew J. Reilly
>Simpson Thacher & Bartlett LLP
>1155 F. Street NW
>Washington DC 20004
>(202) 636-5566
>matt.reilly@stblaw.com
>
>Mikael Abye
>Sherman & Sterling LLP
>Four Embarcadero Center
>San Francisco, CA 94111
>(415) 616-1143
>mabye@shearman.com

*/s/ Kathryn W. Bayer*