UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ENERGY CONVERSION DEVICES
LIQUIDATION TRUST, BY AND THROUGH
ITS LIQUIDATING TRUSTEE, JOHN MADDEN,

    Plaintiff,

v.

                                          Case No. 13-14241

TRINA SOLAR LIMITED, et al.,

    Defendants.
                                         /

**OPINION AND ORDER GRANTING DEFENDANTS' JOINT MOTION
TO DISMISS PLAINTIFF'S COMPLAINT**

On October 4, 2013, Plaintiff Energy Conversion Devices Liquidation Trust filed a complaint against Defendants Trina Solar Limited and its wholly-owned American subsidiary Trina Solar (U.S.), Inc. (collectively, "Trina"), Yingli Green Energy Holding Company Limited and its wholly-owned American subsidiary Yingli Green Energy America, Inc. (collectively "Yingli"), and Suntech Power Holdings Company, Ltd. and its wholly-owned American subsidiary Suntech America, Inc. (collectively "Suntech"). Plaintiff alleges that Defendants violated the Sherman Act, 15 U.S.C. § 1, and the Michigan Antitrust Reform Act (the "MARA"), Mich. Comp. Laws § 445.772, by engaging in "an unlawful conspiracy and combination to fix prices at unreasonably low and/or predatory levels and to dump product" in restraint of trade. (Dkt. # 1, Pg. ID 30-31.) Now before the court is Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim, filed on April 18, 2014. The matter is fully briefed, and no hearing is needed.

*See* E.D. Mich. LR 7.1(f)(2). For the following reasons, Defendants' motion to dismiss will be granted.

## I. BACKGROUND

From 2003 until 2012, Plaintiff produced flexible, thin-film photovoltaic solar panels. (Dkt. # 1, Pg. ID 7.) Plaintiff earned $239.4 million in revenue from solar panel sales in 2009 and $302 million in 2009. (*Id.* at 16.) Plaintiff's solar panel revenues dropped to $211 million in 2010 and $193 million in 2011, leading Plaintiff to file for bankruptcy in 2011. (*Id.* at 2, 17.) According to Plaintiff's complaint, Trina Solar Limited, Yingli Green Energy Holding Company Limited, and Suntech Power Holdings Company, Ltd. are leading manufacturers of solar panels, each incorporated in the Cayman Islands and headquartered in China, with billions in assets and annual revenue. (*Id.* at 7-11.)

Plaintiff alleges that, through the China New Energy Chamber of Commerce ("China New Energy")—a leading trade association in China for alternative energy—Defendants would, *inter alia*, "share market and industry information, 'collaborate', [and] coordinate efforts with the government." (*Id.* at 11.) Plaintiff further alleges that, starting in 2008, Defendants agreed to sell solar panels at artificially low and/or below-cost prices and "simultaneously reduced prices at rates in tandem by approximately 75%" (*id.* at 17), which forced approximately twenty American companies out of the solar panel market and resulted in Defendants' collective market share exceeding 80%. (*Id.* at 17-18.) According to Plaintiff, following the annual China New Energy International Forum in 2007, 2008, and 2010, Defendants "uniformly" reduced the price of imported solar panels by 40%, 18%, and then 20%. (*Id.* at 23-24.)

2

## II. STANDARD

Federal Rule of Civil Procedure 8(a)(2), requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In order to survive Defendants' motion to dismiss, the complaint must allege "[f]actual allegations . . . enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, the court views the complaint in the light most favorable to the plaintiff and takes all well-pleaded factual allegations as true. *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). However, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679.

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted). The court may also consider documents introduced by defendants in their motion to dismiss if the documents "are referred to in the plaintiff's complaint and

are central to her claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

## III.  DISCUSSION

### A. The Sherman Act

Plaintiff alleges that Defendants violated § 1 of the Sherman Act by engaging in a conspiracy "to fix prices at unreasonably low and/or predatory levels and to dump product." (Dkt. # 1, Pg. ID 30.)  Section 1 of the Sherman Act provides, in relevant part, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."  15 U.S.C. § 1.  In general, "[t]o establish an antitrust violation, a plaintiff must show a contract, combination, or conspiracy that affects interstate commerce and unreasonably restrains trade.  To show unreasonable restraint of trade, the plaintiff must show that the conspiracy has the potential to produce adverse, anti-competitive effects within relevant product and geographic markets."  *Lie v. St. Joseph Hosp. of Mount Clemens, Mich.*, 964 F.2d 567, 568 (6th Cir. 1992) (internal quotation marks and citations omitted).

The Supreme Court has set forth "two complementary categories of antitrust analysis."  *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 692 (1978).  Courts typically analyze the alleged conduct under the "rule of reason" which "requires the factfinder to decide whether under all the circumstance of the case the restrictive practice imposes an unreasonable restraint on competition."  *Arizona v. Maricopa Cnty. Med. Soc.*, 457 U.S. 332, 344 (1982).  The rule of reason analysis requires courts "to 'evaluate[ ] [the agreement] by analyzing the facts peculiar to the business, the history of the restraint, and the reasons it was imposed . . . to form a judgment about the

4

competitive significance of the restraint.'" *Lie*, 964 F.2d at 569 (quoting *Nat'l Soc'y of Prof'l Eng'rs*, 435 U.S. at 692). However, "agreements whose nature and necessary effect are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality . . . are 'illegal per se.'" *Nat'l Soc'y of Prof'l Eng'rs*, 435 U.S. at 692. "Per se illegal restraints on trade . . . do not require proof of market power." *Lie*, 964 F.2d at 569. Plaintiff alleges both that Defendants' price-fixing and dumping conspiracy is a *per se* restraint of trade and that, in the alternative, it is an unreasonable restraint of trade.

### B. Antitrust Standing

In addition to establishing Article III standing, when bringing an action under the Sherman Act, the plaintiff must establish antitrust standing in order to survive a Rule 12(b)(6) motion to dismiss. *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007) (en banc). To establish antitrust standing, "an antitrust claimant must do more than make 'allegations of consequential harm resulting from a violation of the antitrust laws,' and that is true even when the complaint is 'buttressed by an allegation of intent to harm the [plaintiff].'" *Id.* (quoting *Ass'n Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 545 (1983)). Likewise, a plaintiff does not have antitrust standing when certain "relevant factors—the nature of the [claimant's] injury, the tenuous and speculative character of the relationship between the alleged antitrust violation and the [claimant's] alleged injury, the potential for duplicative recovery or complex apportionment of damages, and the existence of more direct victims of the alleged conspiracy—weigh heavily against judicial enforcement." *Id.* (citing *Ass'n Gen. Contractors of Cal., Inc.*, 459 U.S. at 545.).

5

"[A]ntitrust standing 'ensures that a plaintiff can recover only if the loss stems from a competition-*reducing* aspect or effect of the defendant's behavior.'" *Id.* (quoting *Atl. Richfield Co. V. USA Petroleum Co.*, 495 U.S. 328, 344 (1990)).  As such, a "necessary, but not always sufficient," requirement for antitrust standing is an antitrust injury.  *Id.* at 450 (citing *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986)).[1]  An antitrust injury is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Id.* (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977))*.*  "Far from being 'a mere technicality,' antitrust standing 'is the glue that cements each suit with the purposes of the antitrust laws, and prevents abuses of those laws' by claimants seeking to halt the strategic behavior of rivals that increases, rather than reduces, competition." *Id.* at 449-50 (quoting *HyPoint Tech., Inc. v. Hewlett-Packard Co.*, 949 F.2d 874, 877 (6th Cir. 1991).

Defendants argue that Plaintiff has not suffered antitrust injury and therefore lacks antitrust standing.  (Dkt. # 17, Pg. ID 121.)  The complaint alleges that Defendants sold solar panels at "unreasonably low and/or [at] predatory levels." (Dkt. # 1, Pg. ID 30.)  It asserts that  "Defendants directly harmed competition in the United States for commercial and industrial rooftop solar panels by reducing consumer choice, stifling

---

[1]The fact that Plaintiff alleged "a *per se* illegal restraint of trade does not obviate the need to . . . adequately allege[] antitrust injury." *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 909 n.15 (6th Cir. 2003); *see Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 341-42 (1990) ("We . . . reject respondent's suggestion that no antitrust injury need be shown where a *per se* violation is involved.  The *per se* rule is a method of determining whether § 1 of the Sherman Act has been violated, but it does not indicate whether a private plaintiff has suffered antitrust injury . . . .").

6

innovation, drastically undercutting solar panel prices, and forcing a substantial part of American production into bankruptcy." (*Id.* at 26.)  However, unreasonably low and/or below-cost pricing does not harm competition and, thereby, confer antitrust standing by itself.  Such "[p]ricing is predatory when a company foregoes short-term profits in order to develop a market position such that the company can later raise prices and recoup profits.  Predatory pricing differs from healthy competitive pricing in its motive: a predator by his pricing practices seeks to impose losses on other firms, not garner gains for itself."  *Richter Concrete Corp. v. Hilltop Concrete Corp.*, 691 F.2d 818, 823 (6th Cir. 1982).  In *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222-24 (1993), the Supreme Court set forth two prerequisites for a plaintiff to recover on a claim for predatory pricing under § 2 of the Sherman Act:  a plaintiff must show that (1) "the prices complained of are below an appropriate measure of its rival's costs" and (2) "the competitor had . . . a dangerous probability[] of recouping its investment in below-cost prices."  *Id.* at 222-24.

### i.  The Complaint Alleges Below-Cost Pricing

Regarding the first prerequisite, the complaint adequately alleges that Defendants engaged in below-cost pricing.  Plaintiff claims that Suntech's former CEO admitted that "Suntech, to build market share, is selling solar panels on the American market for less than the cost of materials, assembly, and shipping."  (Dkt. # 1, Pg. ID 4.)  Additionally, Plaintiff reported that, on October 10, 2012,  the United States Department of Commerce "found that Defendants and other Chinese manufacturers of solar panels

7

dumped product in the United States market at less than fair value.[2]  Commerce assigned to each of Suntech, Trina, and Yingli a weighted average dumping margin[3] of up to 31%." (Dkt. # 1-1, Pg. ID 33.)  Plaintiff also states that the International Trade Commission conducted hearings on Defendants' pricing scheme and concluded "that the solar manufacturing industry in the United States has been materially injured by reason of the subsidized Chinese [s]olar panels that are sold at less than fair value in the United States."[4]  (Dkt. # 1, Pg. ID 19.)

### ii.  Plaintiff Is Required to Allege Recoupment

Regarding the second prerequisite, Plaintiff first contends that it was not required to allege recoupment to survive a motion to dismiss because the recoupment requirement only applies to claims of monopolization asserted under § 2 of the Sherman Act and not to claims asserted under § 1 of the Sherman Act. (Dkt. # 38, Pg. ID 373.)

---

[2] For the purposes of the United States's antidumping statutes, the determination as to whether goods are being sold "at less than fair value" is based upon a comparison of the export price for the goods and the "normal value" of the goods.  19 U.S.C. § 1677b(a).  The "normal value" of goods is, generally, the price at which "like product" is first sold in the exporting country (or the price at which like product is sold in a different country when certain requirements are met).  19 U.S.C. § 1677b(a)(1)(B)-(C); *see generally* 19 C.F.R. § 351.401–351.415 (regulating the calculation of export price, constructed export price, fair value, and normal value).  Thus, the Department of Commerce's finding that Defendants' dumped product at less than fair value is not equivalent to a finding of below-cost pricing.

[3] A "dumping margin . . . is the amount by which the normal value exceeds the export price or constructed export price of the subject merchandise."   (Dkt. # 1-1, Pg. ID 34.)

[4] According to Plaintiff, the United States Department of Commence "determined that illegal subsidies accounted for 14.78%, 15.97%, and 15.24% of Suntech, Trina, and Yingli's respective prices."  (Dkt. # 1-1. Pg. ID 35.)

Section 2 of the Sherman Act provides, in relevant part, "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony . . . ." 15 U.S.C. § 2. Plaintiff relies on *American Needle, Inc. v. National Football League*, 560 U.S. 183 (2010), in which the Supreme Court discussed the differences between § 1 and § 2 of the Sherman Act, to argue that case law involving § 2 of the Sherman Act has limited precedential value when evaluating a claim brought under § 1. However, Plaintiff's reliance on *American Needle* is misplaced. In *American Needle*, the Supreme Court noted that "Section 1 applies only to concerted action that restrains trade," whereas "Section 2, by contrast, covers both concerted and independent action, but only if that action 'monopolize[s]' or 'threatens actual monopolization,' a category that is narrower than restraint of trade." *Id.* at 190 (internal quotation marks and citations omitted). The Court then expounded on the logic behind these two provisions:

> [I]n § 1 Congress treated concerted behavior more strictly than unilateral behavior. This is so because unlike independent action, [c]oncerted activity inherently is fraught with anticompetitive risk insofar as it deprives the marketplace of independent centers of decisionmaking that competition assumes and demands. And because concerted action is discrete and distinct, a limit on such activity leaves untouched a vast amount of business conduct. As a result, there is less risk of deterring a firm's necessary conduct; courts need only examine discrete agreements; and such conduct may be remedied simply through prohibition. Concerted activity is thus judged more sternly than unilateral activity under § 2. For these reasons, § 1 prohibits any concerted action in restraint of trade or commerce, even if the action does not threate[n] monopolization. And therefore, an arrangement must embody concerted action in order to be a contract, combination . . . or conspiracy under § 1.

*Id.* (internal quotation marks and citations omitted).

9

*American Needle* does not support Plaintiff's contention that case law discussing § 2 of the Sherman Act has little value when considering a claim brought under § 1. In *American Needle*, the Court merely recognized that a § 1 violation requires concerted action whereas a § 2 violation requires monopolization or a threat of actual monopolization. This distinction does not impact the purpose behind requiring a plaintiff to allege recoupment in order to state a claim of predatory pricing. The logic for such a requirement applies with equal force to claims brought under § 1 or § 2. In *Brooke Group*, the Supreme Court explained that below-cost pricing without recoupment—"unsuccessful predation"—would generally be a boon to consumers:

> Recoupment is the ultimate object of an unlawful predatory pricing scheme; it is the means by which a predator profits from predation. Without it, predatory pricing produces lower aggregate prices in the market, and consumer welfare is enhanced. Although unsuccessful predatory pricing may encourage some inefficient substitution toward the product being sold at less than its cost, unsuccessful predation is in general a boon to consumers.

*Brooke Group*, 509 U.S. at 224.

"That below-cost pricing may impose painful losses on its target is of no moment to the antitrust laws if competition is not injured." *Id.* In order for a complaint to allege that below-cost pricing injures competition, it must allege that "there is a likelihood that the predatory scheme alleged would cause a rise in prices above a competitive level that would be sufficient to compensate for the amounts expended on the predation, including the time value of the money invested in it." *Id.* at 225.

Furthermore, by requiring plaintiffs to allege recoupment, courts reduce the risk of litigants using the Sherman Act to harm, rather than protect competition. *Brooke Group*, 509 U.S. at 226-27 ("It would be ironic indeed if the standards for predatory

pricing liability were so low that antitrust suits themselves became a tool for keeping prices high."). As the Court explained in *Brooke Group*, below-cost pricing and recoupment "are not artificial obstacles to recovery; rather, they are essential components of real market injury." 509 U.S. at 226. "[T]he mechanism by which a firm engages in predatory pricing—lowering prices—is the same mechanism by which a firm stimulates competition; because 'cutting prices in order to increase business often is the very essence of competition . . . [;] mistaken inferences . . . are especially costly, because they chill the very conduct the antitrust laws are designed to protect.'" *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 122 n.17 (quoting *Matsushita v. Elec. Indus. Co., Ltd.*, 475 U.S. 574, 594 (1986)).

Conversely, there is little fear that dismissing a predatory pricing conspiracy for failure to allege recoupment would encourage such conspiracies because "*successful* predatory pricing conspiracies involving a large number of firms can be identified and punished once they succeed, since some form of minimum price-fixing agreement would be necessary in order to reap the benefits of predation." *Matsushita*, 475 U.S. at 595 (emphasis in original) (reviewing claims that defendants violated §§ 1 and 2 of the Sherman Act by engaging in a scheme that involved maintaining low prices for television receivers sold in the United States).

### iii. The Complaint Does Not Allege a Dangerous Probability of Recoupment

Plaintiff has failed to adequately allege antitrust injury caused by predatory pricing because the complaint does not allege that "the competitor had . . . a dangerous probability[] of recouping its investment in below-cost prices." *Brooke Grp.*, 509 U.S. at

222-24. Although the complaint alleges that Defendants have sold solar panels at below-cost prices in order "to build market share" (Dkt. # 17, Pg. ID 34), "[e]vidence of below-cost pricing is not alone sufficient to permit an inference of probable recoupment and injury to competition." *Brooke Grp.*, 509 U.S. at 226. The complaint does not allege that Defendants intend to raise prices to, and sustain prices at, supracompetitive levels sufficient to recoup the losses (with interest) that were allegedly sustained as a result of below-cost pricing. The complaint merely states that, in light of Defendants' 80% market share, Defendants have the *ability* to raise prices to such a level. (*See* Dkt. 1, Pg. ID 18 ("Defendants can freely raise prices"); *id.* at 26-27 ("[T]he steady and sustained low and/or predatory pricing and the resulting destruction of American commerce resulted in Defendants having power and control over entry and price so that Defendants are able to raise prices and thus injure consumers.").)

Furthermore, accepting the factual allegations contained in the complaint as true, not only has Plaintiff failed to allege a dangerous probability of recoupment, it is questionable whether Plaintiff has alleged any probability of recoupment. "[W]ithout barriers to entry it would presumably be impossible to maintain supracompetitive prices for an extended time" in order for conspirators to recoup their losses (including interest) from their below-cost prices. *Matsushita*, 475 U.S. at 591 n.15. In the absence of barriers to entry, "[i]f the defendants should try to raise prices [to high enough prices to recoup losses from below-cost pricing], they would attract new competition." *Id.* (quoting Frank H. Easterbrook, *The Limits of Antitrust*, 63 Texas L. Rev. 1, 26 (1984)).

Plaintiff alleges that "[t]here are substantial barriers to entry into the production of commercial and industrial rooftop solar systems," namely (1) "[Plaintiff's] intellectual

property and successful history of producing industry-progressing technologies," (2) "[t]he cost for acquiring the necessary land and commodities, and constructing the required plant facility," and (3) the need to "hire hundreds of highly educated employees . . . and invest tens of millions of dollars in research and development." (Dkt. # 1, Pg. ID 14-15.) However, the complaint also states that "many solar companies, including Defendants, recently entered the solar panel industry in the past ten to fifteen years." (*Id.* at 16.) Accepting as true Plaintiff's allegations of barriers to entry into the solar panel market, the ability of "many" companies to enter the market in recent years makes it implausible that Defendants would be able to recoup their alleged losses. Even if recoupment were economically feasible, the complaint does not plausibly allege that there is "a dangerous probability[] of recoup[ment]." *Brooke Grp.*, 509 U.S. at 224.

Because the court finds that Plaintiff has failed to allege a dangerous probability of recoupment and, therefore, has failed allege antitrust standing, the court does not consider Defendants' additional arguments for dismissing Defendant's Sherman Act claim.

### B. The MARA Claim

Section 445.772 of MARA provides, "A contract, combination, or conspiracy between 2 or more persons in restraint of, or to monopolize, trade or commerce in relevant market is unlawful." That section "adopted language from and is interpreted consistent with the Sherman Act, 15 U.S.C. § 1." *Perceptron, Inc. v. Sensor Adaptive Machines, Inc.*, 221 F.3d 913, 919 n.6 (citing *Compton v. Joseph Lepak, D.D.S., P.C.*, 397 N.W.2dd 311 (Mich. 1986)); *see* Mich. Comp. Laws Ann. § 445.784(2) (1985) ("It is the intent of the legislature that in construing all sections of [MARA], the courts shall

give due deference to interpretations given by the federal courts to comparable antitrust statutes . . . ."). "Because [MARA] and the Sherman Anti-Trust Act mirror each other, [the court] appl[ies] the same analysis to both the federal and state anti-trust claims." *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 323 F.3d 366, 368 n.1 (6th Cir. 2003); *First Med. Representatives, LLC v. Futura Med. Corp.*, 195 F. Supp. 2d 917, 922 (E.D. Mich. 2002) ("Michigan courts apply Sherman Act analysis to the MARA . . . ."). Accordingly, Plaintiff's MARA claim will be dismissed as well.

## IV.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendants' Joint Motion to Dismiss Plaintiff's Complaint (Dkt. # 17) is GRANTED.

    s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  October 31, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 31, 2014, by electronic and/or ordinary mail.

    s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\13-14241.TRINA.GrantMotionDismiss.DMI.wpd