# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ENERGY CONVERSION DEVICES LIQUIDATION TRUST, BY AND THROUGH ITS LIQUIDATING TRUSTEE, JOHN MADDEN, | ) ) ) ) | Civil Action No. 2:13-CV-14241-RHC-RSW |
| Plaintiff, | ) ) ) | Hon. Robert H. Cleland |
| v. | ) ) | Mag. R. Steven Whalen |
| TRINA SOLAR LIMITED, et al., | ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## PLAINTIFF'S MOTION FOR RECONSIDERATION

| | |
|---|---|
| W. Gordon Dobie<br>wdobie@winston.com<br>Derek J. Sarafa (P#57088)<br>dsarafa@winston.com<br>William C. O'Neil<br>woneil@winston.com<br>Edward L. Foote<br>efoote@winston.com<br>**WINSTON & STRAWN LLP**<br>35 West Wacker Drive<br>Chicago, IL 60601<br>Telephone: 312-558-5600<br>Facsimile: 312-558-5700 | Robert B. Pringle<br>rpringle@winston.com<br>**WINSTON & STRAWN LLP**<br>101 California Street<br>San Francisco, CA 94111<br>Telephone: 415-591-1000<br>Facsimile: 415-591-1400 |

## STATEMENT OF ISSUES PRESENTED

1. Whether allegations of loss of innovation and consumer choice are sufficient grounds for establishing antitrust injury, and therefore, constituting a palpable defect such that the Court's Order dismissing ECD's Section 1 claim for lack of antitrust injury should be reversed.

2. Whether the Court's interpretation of Supreme Court jurisprudence to indicate that allegations of recoupment are required to plead a Section 1 claim constitutes a palpable defect such that the Court's Order dismissing ECD's Section 1 claim for lack of antitrust injury should be reversed.

# MOST APPROPRIATE AUTHORITIES

**Cases**

*American Needle, Inc. v. National Football League*, 560 U.S. 183 (2010) ... 1, 2, 11

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993)................................................................. 1, 2, 3

*Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104 (1986) ........................ 1, 2, 6, 8

*Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002) ..................3

*FTC v. Procter & Gamble Co.*, 386 U.S. 568 (1967)..................................................4

*Full Draw Productions v. Easton Sports. Inc.*, 182 F.3d 745 (10th Cir. 1999) ......18

*Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 352 F.3d 367 (9th Cir. 2003) .....4

*Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F. 3d 972 (6th Cir. 2000) ....................................................................................................................4

*Matsushita v. Elec. Indus. Co., Ltd.*, 475 U.S. 574 (1986)............................... passim

*Re/Max Int'l Inc. v. Realty One, Inc.*, 173 F.3d 995 (6th Cir. 1999)........................3

*Spirit Airlines, Inc. v. Northwest Airlines, Inc.*, 431 F.3d 917 (6th Cir. 2005)  14, 16

**Statutes**

15 U.S.C. § 15 ..........................................................................................................9

**Rules**

ABA Model Jury Instructions in Civil Antitrust Cases, A-3 (2005) ......................12

Pursuant to the Federal Rules of Civil Procedure and Local Rule 7.1(h), Plaintiff ECD files this Motion for Reconsideration.  ECD respectfully requests the Court reconsider its judgment dismissing ECD's Section 1 claim for failure to allege antitrust standing for two primary reasons.  First, ECD sufficiently alleged antitrust injury based on lack of consumer choice and innovation, either of which are sufficient grounds for finding antitrust injury.  ECD respectfully submits that this issue was overlooked by the Court in its Order dismissing ECD's claims and that consideration of this argument would result in a different outcome.

Second, recoupment is not required to plead antitrust injury in the instant Section 1 case.  The Court's Order dismissing ECD's Complaint primarily relies on four Supreme Court cases: *Matsushita v. Elec. Indus. Co., Ltd.*, 475 U.S. 574 (1986), *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104 (1986), *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993), and *American Needle, Inc. v. National Football League*, 560 U.S. 183 (2010).  ECD respectfully requests that the Court reconsider its analysis of those cases because they do not hold that a Section 1 Sherman Act claim must allege recoupment.  Indeed, ECD believes that those Supreme Court decisions, taken together with the federal standard pattern jury instructions for a Section 1 claim, show that a plaintiff must only show an injury to competition, such as predatory pricing aimed at driving competitors out of the market, in order to allege a Section 1 claim.  ECD

1

respectfully submits that the Court's conclusion that ECD failed to allege antitrust injury, and the Court's interpretation that the *Matsushita*, *Cargill*, *Brooke Group*, and *American Needle* decisions require ECD to have alleged recoupment are incorrect and constitute a palpable defect of its Order dismissing ECD's claims. Moreover, ECD believes that the correct interpretation of the case law cited by both parties would lead the Court to conclude that ECD's claims should not have been dismissed.

## PROCEDURAL HISTORY

ECD filed its Complaint on October 4, 2013, alleging violations of Section 1 of the Sherman Act and Section 445.772 of the Michigan Antitrust Reform Act ("MARA"). (Dkt. 1 at ¶ 99.) Defendants moved to dismiss ECD's Complaint, which the Court subsequently granted. (Dkt. 17, 40.) In its Order dismissing ECD's Complaint, the Court concluded that ECD was required to allege recoupment as part of its Section 1 claim, citing to the Supreme Court's decisions in *American Needle*, *Brooke Group*, *Cargill*, and *Matsushita*. (*See* Dkt. 40 at 9-11.) The Court then determined that ECD "has failed to allege a dangerous probability of recoupment and, therefore, has failed [to] allege antitrust standing." (*Id.* at 13.)[1] The Court found that, although ECD alleged that Defendants sold solar panels at below-cost and have the ability to raise prices, such allegations were

---

[1] Because ECD's MARA claim mirrors its Sherman Act claim, it was also dismissed. (Dkt. 40 at 14.)

not "sufficient to permit an inference of probable recoupment and injury to competition." (*Id.* at 12 (quoting *Brooke Group*, 509 U.S. at 226).)  The Court also stated that ECD's allegation that many solar companies had entered into the market in the past ten to fifteen years conflicted with its allegation that there were substantial barriers to entry, making it "implausible that Defendants would be able to recoup their alleged losses." (*Id.* at 13.)

## LEGAL STANDARD

The Court may grant a motion for reconsideration when the movant shows "a palpable defect by which the court has been misled and . . . that correcting the defect will result in a different disposition of the case." *Lucia v. Ford Motor Co.*, 2014 WL 2002445, at *2 (E.D. Mich. May 15, 2014).

## ARGUMENT

### A.   ECD Sufficiently Alleged Antitrust Injury

While the Court focused exclusively on whether ECD adequately plead recoupment, recoupment is not the only way of sufficiently pleading antitrust injury.  Specifically, antitrust injury can be proved through well plead allegations of loss of consumer choice and innovation. *Re/Max Int'l Inc. v. Realty One, Inc.*, 173 F.3d 995, 1023 (6th Cir. 1999) (finding antitrust injury without recoupment); *see also Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 789 (6th Cir. 2002) ("[R]educed consumer choice [is] harmful to competition."); *FTC v. Procter &*

*Gamble Co.*, 386 U.S. 568, 598 (1967) ("innovation [is the] very essence of competition") (Harlan, J., concurring); *Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F. 3d 972, 977 (6th Cir. 2000) (antitrust injury can be shown by a single injured competitor plaintiff when there is the "elimination of a superior product"); *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 374 (9th Cir. 2003) ("One form of antitrust injury is '[c]oercive activity tha prevents its victims from making free choices between market alternatives.") (quoting *Amarel v. Connell*, 102 F.3d 1494, 1509 (9th Cir. 1996)).

Consistent with this case law, here, ECD alleges that as a result of Defendants' conspiracy, at least twelve domestic manufacturers have been shut down and ten domestic companies have been forced out of business, some of which offered alternative products to those offered by Defendants (including ECD).  (Dkt. 1 at ¶¶ 6, 46, 47, 80, 95).  ECD further alleges that its solar panels utilized innovative technology that is superior to the panels sold by Defendants. (*Id.* at ¶¶ 16, 38-41.)  For example, ECD's Complaint describes how its panels "generated electricity earlier in the day and later into the evening, and performed better in diffuse light and higher temperatures than conventional crystalline panels." (*Id.* at ¶ 16.)  When compared to Defendants' products, ECD's panels provided a "higher electricity output per rooftop" and "superior wind resistance of winds greater than 185 mph, or a category 5 hurricane." (*Id.* at ¶ 41.)

4

Additionally, ECD's panels weighed less, were more flexible, and were easier to install since they did not require rooftop penetration.  (*Id.*)   ECD's panel provided a better option for customers with lower load-bearing roofs and customers in windier regions.  Due to Defendants' conduct, customers no longer have ECD's panel as an option.   ECD alleges that Defendants' actions have directly led to a significant lack of innovation and consumer choice, as consumers have been deprived of alternative products such as ECD's solar panels and are forced to purchase Defendants' inferior silicon panels.  (*Id.* at ¶¶ 6, 16, 38-41, 60, 80, 95.) These allegations are admitted as true for purposes of ruling on a motion to dismiss.

Respectfully, it appears that the Court arrived at its conclusion regarding antitrust injury without any analysis as to whether these allegations of loss of consumer choice and innovation are sufficient.  (Dkt. 40 at 6–7.)   Instead, the Court proceeded to analyze predatory pricing as a basis for establishing antitrust injury under a Section 2 claim.  (*See* Dkt. 40 at 7.)  Therefore, ECD respectfully requests the Court to reconsider in light of its allegations concerning loss of consumer choice and innovation which are sufficient grounds for finding antitrust injury.

**B.      Recoupment Is Not Required For A Section 1 Claim**

Recoupment is not required to establish a Section 1 claim for the reasons outlined below.  Respectfully, the Court's conclusion to the contrary is based on a misreading of Supreme Court jurisprudence, which represents a palpable defect and requires reversal.  Notwithstanding, ECD intends to file a Rule 59(e) motion seeking to alter or amend judgment, in conjunction with a Rule 15(a) motion seeking leave to amend the Complaint, on the ground that recent discovery demonstrates that Defendants are, in fact, recouping their losses, and therefore leave to amend the Complaint should be granted.

**1.      The *Matsushita* And *Cargill* Decisions Do Not Establish A Requirement Is A Necessary Element For A Complaint's Allegations Of A Violation Of The Sherman Act**

ECD alleges a Section 1 claim.  The Court cites the opinions issued in *Matsushita* and *Cargill*, both of which address Section 2 claims, in support of its conclusion that ECD was required to allege recoupment as part of its Section 1 claim.  (Dkt. 40 at 11–12.)   ECD respectfully submits that the Court's analysis with respect to *Matsushita* is flawed for two reasons.  *First*, *Matsushita* did not consider – indeed, declined to review – the Third Circuit's decision that the plaintiffs had proved a Section I violation.  The Supreme Court in *Matsushita* only reviewed the decision of the Third Circuit, holding that the evidence supported a Section II violation:

6

The Court of Appeals found that respondents' allegation of a
horizontal conspiracy to engage in predatory pricing, if proved, would
be a *per se* violation of § 1 of the Sherman Act. Petitioners did not
appeal from that conclusion.

*Matsushita*, 475 U.S. at 585 (internal citation omitted). Thus, *Matsushita's*

language regarding recoupment is not applicable to ECD's Section 1 claim.

*Second*, the Supreme Court did not establish a requirement that recoupment

is a necessary element to a Section 2 violation in *Matsushita*. Instead, the Court

treated the issue of recoupment as part of the general issue of whether the plaintiffs

had alleged and proved a conspiracy. The case was remanded to the Third Circuit,

which was asked to determine whether there was any evidence on record

supporting a plausible conspiracy under the Supreme Court's *Monsanto* decision:

The Court of Appeals did not take account of the absence of a
plausible motive to enter into the alleged predatory pricing
conspiracy. It focused instead on whether there was 'direct evidence
of concert of action.' The Court of Appeals erred in two respects: (i)
the 'direct evidence' on which the court relied had little, if any,
relevance to the alleged predatory pricing conspiracy; and (ii) the
court failed to consider the absence of a plausible motive to engage in
predatory pricing. . . . Our decision in *Monsanto Co. v. Spray-Rite
Service Corp.*, establishes that conduct that is as consistent with
permissible competition as with illegal conspiracy does not, without
more, support even an inference of conspiracy. On remand, the Court
of Appeals is free to consider whether there is other evidence that is
sufficiently unambiguous to permit a trier of fact to find that
petitioners conspired to price predatorily. The evidence must 'ten[d]
to exclude the possibility' that petitioners underpriced respondents to
compete for business rather than implement an economically senseless
conspiracy.

*Id.* at 595–598, 598 n.21 (internal quotes and citations omitted). Thus, in *Matsushita*, the Court did not require dismissal of the case for failure to allege or prove recoupment; instead, it treated recoupment as an issue relating to "conspiracy."

Moreover, this Court's reference to the *Cargill* case does not touch upon the Supreme Court's opinion in *Cargill* that predatory pricing destroys both competitors and in the long run, competition, and constitutes antitrust injury. In *Cargill*, the Supreme Court defined "predatory pricing" and antitrust injury based on the elimination of competitors:

> Predatory pricing may be defined as pricing below an appropriate measure of cost for the purpose of eliminating competitors in the short run and reducing competition in the long run. It is a practice that harms both competitors *and* competition. In contrast to price cutting aimed simply at increasing market share, predatory pricing has as its aim the elimination of competition. Predatory pricing is thus a practice 'inimical to the purposes of [the antitrust] laws.' *Brunswick*, 429 U.S. at 488, 97 S.Ct. at 697, and one capable of inflicting antitrust injury.

*Cargill*, 479 U.S. at 117–118. The Court quotes the law (Section 4):

> Like § 16, § 4 provides a vehicle for private enforcement of the antitrust laws. Under § 4, 'any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States …, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.'

8

*Id*. at 109 (quoting 15 U.S.C. § 15), and then states the meaning of antitrust injury:

> Plaintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful.

*Id*. (citing 15 U.S.C. § 15 and  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).   Thus, *Cargill* stands for the proposition that predatory pricing itself that eliminates competitors can constitute an antitrust injury.

### 2.     *Brooke Group*: Given the Supreme Court Jurisprudence Discussed Herein, There Is No Occasion To Extend The *Brooke Group* Decision To A Section 1 Case

No court has ever ruled that *Brooke Group* should extend to a Section 1 case.   The Court in *Brooke Group* did not consider a Section 1 claim or even the question of recoupment as it relates to a Section 2 claim at issue in *Matsushita*. *Brooke Group* simply held that in the context of a Robinson-Patman Act claim, the issue of recoupment is a question that may relate to standing.   *Brooke Group* does not apply to a Section 1 claim, and no party in the instant litigation has cited a single case that has held, or even suggests, that *Brooke Group*'s analysis applies to a Section 1 claim.

Further, nothing in the Court's analysis in *Brooke Group* suggests that it was meant to apply to a Section 1 claim.   *Brooke Group*'s citation to *Matsushita* is not on point.   The Court in *Matsushita*, which was considering a Section 2 claim and not a Section 1 claim, treats recoupment as an issue relating to the existence of a

conspiracy, not antitrust injury. Moreover, *Brooke Group*'s holding appears to be based upon a Supreme Court case involving mergers, *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962)—a set of facts not at issue here. The Court in *Brooke Group* cited *Brown Shoe* for the proposition that the antitrust laws were enacted for the protection of competition and not competitors. *Brooke Group*, 509 U.S. at 224. However, the Court in *Brooke Group* did not cite the complete quotation from *Brown Shoe*. The complete sentence, only partially quoted in *Brooke Group*, is:

> It is competition, not competitors, which the Act protects. But we cannot fail to recognize Congress' desire to promote competition through the protection of viable, small, locally owned business.

*Brown Shoe Co.*, 370 U.S. at 344. The Supreme Court declared the merger in *Brown Shoe* unlawful because the integrated companies would substantially lessen competition by injuring viable, small, locally-owned businesses.

Further, the jury instruction regarding antitrust injury (discussed *infra*), makes it clear that a Section 1 violation requires no such reference to post-predation profits. In any event, assuming such an instruction, the jury is entitled to determine, based upon industry or economic experts, whether the elimination of ten competitors results in competitive injury.

> **3.    The Supreme Court's Decision In *American Needle* Does Not Distinguish Between The Removal Of Competitors and Effect On Competition**

*American Needle*, decided by a unanimous Supreme Court some years after *Brooke Group*, distinguished between the proof needed in a monopoly case and the proof needed in a restraint of trade case.  In making this distinction, the Court held that the essence of competition derives from a competitor's agency in the market and ability to make decisions independently.

*American Needle* is significant because the Court considered the standing issue by directly equating the destruction of competitors, *i.e.*, independent decisions, with an effect on competition.  In short, the Supreme Court holds that the essence of competition is a competitor's ability to make independent decisions.  There is no distinction between the removal of competitors and an effect on competition:

> Unlike independent action, '[c]oncerted activity inherently is fraught with anticompetitive risk' insofar as it 'deprives the marketplace of independent centers of decisionmaking that competition assumes and demands.' . . . The relevant inquiry, therefore, is whether there is a 'contract, combination . . . or conspiracy' amongst 'separate economic actors pursuing separate economic interests,' such that the agreement 'deprives the marketplace of independent centers of decisionmaking,' . . . and thus of actual or potential competition.

*American Needle, Inc.*, 560 U.S. at 190–195.  The jury question, therefore, is whether the destruction of not one, but ten competitors, has affected competition.  Answering such a question requires testimony from industry authorities and economists.  In short, it is a question of fact, not a question of law, and should be answered by a jury.

4.     **The Standard Pattern Jury Instructions For Section 1 Sherman Act Claims Do Not Require The Jury To Make A Determination Regarding Recoupment**

None of these Supreme Court decisions altered the relevant jury instructions, which outline plaintiff's burden of proof in an antitrust case.  In a Section 1 case, the plaintiff is required to prove:

> First, the existence of a contract, combination or conspiracy between or among at least two separate entities;

> Second, that the contract combination or conspiracy unreasonably restrains trade;

> Third, that the restraint affects interstate or foreign commerce; and

> Fourth, that the restraint caused plaintiff to suffer an injury to its business or property.

*See* ABA Model Jury Instructions in Civil Antitrust Cases, A-3 (2005); approved of in Ninth Circuit Manual of Model Jury Instructions—Civil, Ch. 14 (2007). Under these pattern jury instructions, a plaintiff is not required to set forth proof of recoupment to establish a Section 1 violation.  Assuming for the sake of argument that antitrust injury law requires a jury to consider whether "competition" is affected by the elimination of competitors, the jury would therefore be required to consider evidence such as the elimination of 12 or 14 competitors in the relevant product and geographic markets and expert testimony in reaching a verdict.  There

12

is no requirement that the jury must consider the issue of recoupment in finding a Section 1 violation.

Indeed, the whole concept of recoupment is unnecessary even in the case of a Section 2 claim. ECD respectfully suggests that the Court should recognize and adopt the following position: Under Section 2 of the Sherman Act, the plaintiff must prove that the companies or company alleged to violate Section 2 has monopolized. The jury will be instructed that the plaintiff must prove that the defendants have monopoly power; that is, the power to control and fix prices. Plaintiff also must prove that the entities with that power exercised that power either to obtain a monopoly or to use the monopoly power. One obvious "exercise" of that power is to use predatory pricing. The law, as it has existed for years, therefore requires the plaintiff to prove that the monopolist can control prices and therefore can raise prices at will. There is no need to label such a requirement is "recoupment." The Court erred in dismissing the Complaint based on plaintiff's alleged failure "to allege a dangerous probability of recoupment." (Dkt. 40 at 12.)

### 5.   Recoupment Applies Only To Conspirators Motivated By The Pursuit Of Profits

The Chinese Defendants in this case did not seek profits. The Supreme Court jurisprudence on recoupment cited by this Court is based on the premise that all businesses are motivated by profit. However, ECD has alleged just the opposite

13

in this case: Defendants are not motivated by rational economic principles but rather full employment, and therefore, traditional economic theories such as recoupment do not motivate their behavior.

Specifically, the decisions in *Matsushita* and *Brooke Group* derive from facts from an antitrust book prepared by Robert Bork in which Bork opined that all businesses and conspirators are motivated by profit.  Bork's views on economics were not tested by cross examination, but the Supreme Court nevertheless accepted his views as true, which is the controlling "fact" as it relates to the Supreme Court's *Matsushita* decision on recoupment.  *Matsushita*, 475 U.S. at 589 (quoting R. Bork, The Antitrust Paradox 145 (1978)).

However, Bork's opinion on profits is not a universal truth that applies to every case.  In *Spirit Airlines, Inc. v. Northwest Airlines, Inc.*, 431 F.3d 917 (6th Cir. 2005), a Section 2 case, the Sixth Circuit reversed the District Court's summary judgment on plaintiff's antitrust claim, explaining that each antitrust claim has to be decided on its own particular facts:

> The Supreme Court has preferred to resolve antitrust claims on a case-by-case basis, focusing on the particular facts disclosed by the record . . . *Matsushita* demands only that the non-moving party's inferences be reasonable in order to reach a jury.

*Spirit Airlines, Inc.*, 431 F.3d at 931 (internal citations omitted).  In this case, ECD alleges that Defendants have no interest in making a profit and instead manufactured solar panels in gross excess of demand to flood the American market

14

without regard to profit.  (Dkt. 1, ¶¶ 4, 5, 60, 77.)   Indeed, one of the Defendants, after this case was filed, was briefly placed into bankruptcy.

Even if this Court were to continue to insist upon some notion of recoupment, ECD sufficiently alleges a dangerous probability of recoupment.  The following allegations in the Complaint have been admitted for the purposes of Defendants' motion to dismiss:

- "Finding themselves now able to manipulate the market with their newly achieved market power, defendants can freely raise prices, coordinate output and distribution, and ensure employment in Chinese manufacturing facilities immune from a troublesome American competition that heretofore had stood in the way of defendants' market domination."  (Dkt. 1, ¶ 48.)

- "Defendants' conduct has had a direct substantial and reasonably foreseeable effect on domestic commerce.  Alternatively, the steady and sustained low and or predatory pricing and a resultant destruction of American commerce resulted in defendants having power and control over entry and price so that defendants are able to raise prices and thus injure consumers."  (Dkt. 1, ¶ 81.)

- "Defendants planned their own version of the American solo market.  In the long run as a result of defendants' illegal scheme, American consumers will pay more than they would in a competitive market and be denied access to innovative technology."   (Dkt. 1, ¶ 83.)

These allegations allege that Defendants will raise prices affecting consumers and that Defendants have control over price and entry and can raise prices at will.  Control over pricing and an ability to raise prices at will is the essence of a dangerous probability of recoupment.  The definition of recoupment is raising

15

pricing to affect consumers. Though ECD may not allege the word "recoupment" throughout its Complaint, ECD's allegations establish a dangerous probability of recoupment. ECD respectfully suggests that the Court has erred in dismissing the Complaint for failure to use the word "recoupment" where ECD otherwise alleged a dangerous probability of raising prices on consumers.

### 6.   ECD Alleges Barriers To Entry

The Court concluded that it is "implausible that Defendants would be able to recoup their alleged losses," because ECD alleges that "'many solar companies . . . entered the solar panel industry in the past ten to fifteen years,'" thus contradicting ECD's allegations that there are substantial barriers to entry into the industry. (Dkt. 40 at 13.)   ECD respectfully submits that the Court's conclusion is mistaken where (1) ECD's Complaint is replete with allegations of substantial barriers to entry and (2) ECD alleges that Defendants' conduct itself poses a barrier to entry.

ECD alleges its solar product was the result of nearly 30 years of research using ECD's proprietary process technologies. (Dkt. 1 at ¶ 16.)   In other words, ECD's panel could not be duplicated by competitors without incurring substantial barriers to accessing the necessary information and technology.   ECD further alleges that Defendants were required to raise millions of dollars in order to be listed on the New York Stock Exchange and compete in the American solar industry.   (Dkt. 1 at ¶¶ 17, 19, 20.)   Defendants' production processes were further

16

dependent on sourcing raw material either internally or from third-party suppliers. (Dkt. 1, ¶ 27.)   These types of allegations are sufficient to establish barriers to entry on a motion to dismiss. *Spirit Airlines*, 431 F.3d at 946–947 (holding that showing competitor controlled 64 of the 78 airline gates, a price to access the gate of $100,000 and 25% higher landing fees was sufficient to show a significant barrier to entry existed); *Realcomp II, Ltd. v. Federal Trade Commission*, 635 F.3d 815, 829 (6th Cir. 2005) (affirming finding of significant barrier to entry existed); *In re Packaged Ice Antitrust Litigation*, 723 F. Supp. 2d 987, 1016–1017 (E.D. Mich. 2010) (plaintiff's claims of barrier to market entry among others were sufficient to state a claim under *Twombly*).

Moreover, Defendants' alleged actions are such that they will sell panels below cost, effectively preventing any new company from competitively participating in the American solar market.   While ECD alleges that many solar companies have entered the market in the past ten to fifteen years (Dkt. 1 at ¶ 42), ECD also alleges that Defendants' unlawful scheme began in 2008 and is thus still in its infancy.   (*Id.* at ¶ 45.)   ECD does not allege that any solar companies entered the market once Defendants began to illegally fix their prices.   ECD further alleges that Defendants undertook to "dominate the market for solar panels in the United States" (*id.* at ¶ 1), conducting an "agreed-upon attack on the American solar power industry" (*id.* at ¶ 45) aimed at "neutralizing or destroying competition in

17

the United States for commercial and industrial rooftops." (*Id.* at ¶ 80.)    Put another way, ECD has alleged that any new entrant's competitiveness will be short lived in the face of Defendants' scheme, because Defendants' scheme necessarily involve keeping new competitors out of the market and therefore acts as a barrier to entry.  *See Full Draw Productions v. Easton Sports. Inc.*, 182 F.3d 745, 756 (10th Cir. 1999) (holding that anticompetitive conduct itself can amount to a significant barrier to entry); *Nobody in Particular Presents, Inc. v. Clear Channel Communications, Inc.*, 311 F. Supp. 2d 1048, 1103 (D. Col. 2004) ("Entry barriers may also be created by the defendant's conduct itself.")  Consequently, it is not "implausible" that Defendants will be able to recoup their losses, as the Court suggests.

## CONCLUSION

For the foregoing reasons, ECD respectfully requests that the Court grant its motion for reconsideration.


Dated: November 14, 2014                    Respectfully submitted,

                                            ENERGY CONVERSION DEVICES
                                            LIQUIDATION TRUST


                                            By: */s/ W. Gordon Dobie*

18

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(a), I certify that counsel for ECD has conferred with counsel for Defendants by email on November 14, 2014 regarding the subject matter of this motion.  This motion is opposed by Defendants, and thus there are open issues for the Court to resolve.

*/s/ W. Gordon Dobie*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of November, 2014, a copy of the foregoing was delivered via U.S. Mail and ECF to the following:

Leonid E. Feller
Kirkland & Ellis LLP
300 N. LaSalle
Chicago, IL 60654
(312) 862-2198
Leonid.feller@kirkland.com

Matthew J. Reilly
Simpson Thacher & Bartlett LLP
1155 F. Street NW
Washington DC 20004
(202) 636-5566
matt.reilly@stblaw.com

Mikael Abye
Sherman & Sterling LLP
Four Embarcadero Center
San Francisco, CA 94111
(415) 616-1143
mabye@shearman.com

*/s/ W. Gordon Dobie*

19