**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ENERGY CONVERSION DEVICES
LIQUIDATION TRUST, BY AND THROUGH
ITS LIQUIDATING TRUSTEE, JOHN MADDEN,

      Plaintiff,

v.

                                       Case No. 13-14241

TRINA SOLAR LIMITED, et al.,

      Defendants.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**

On October 31, 2014, the court issued an Opinion and Order Granting
Defendants' Joint Motion to Dismiss Plaintiff's Complaint.  (Dkt. # 40.)  Thereafter,
Plaintiff Energy Conversion Devices Liquidation Trust filed a Motion for Reconsideration
pursuant to Eastern District of Michigan Local Rule 7.1(h) and the Federal Rules of Civil
Procedure.  (Dkt. # 42.)  Defendants Trina Solar Limited *et al.* filed an Opposition to
Plaintiff's Motion for Reconsideration.  (Dkt. # 47.)  The court's previous order set forth
the general factual and procedural history of this case, and familiarity with such history
is presumed.  This matter is fully briefed, and no hearing is needed.  *See* E.D. Mich. LR
7.1(f)(2).   For the reasons stated below, Plaintiff's motion will be denied.

**I.  STANDARD**

Subject to the court's discretion, a motion for reconsideration shall be granted
only if the movant "demonstrate[s] a palpable defect by which the court and the parties
. . . have been misled" and "show[s] that correcting the defect will result in a different

disposition of the case." E.D. Mich. L.R. 7.1(h)(3). "A 'palpable defect' is 'a defect that is obvious, clear, unmistakable, manifest or plain.'" *Buchanan v. Metz*, 6 F. Supp.3d 730, 752 (E.D. Mich. 2014) (quoting *United States v. Lockett*, 328 F. Supp. 2d 682, 684 (E.D. Mich. 2004). The court "will not grant motions for . . . reconsideration that merely present the same issues ruled upon by the court." E.D. Mich. L.R. 7.1(h)(3).

## II. DISCUSSION

In its Opinion and Order Granting Defendants' Joint Motion to Dismiss Plaintiff's Complaint, the court dismissed Plaintiff's claims that Defendants violated the Sherman Act, 15 U.S.C. § 1 and the Michigan Antitrust Reform Act (the "MARA") by "engaging in 'an unlawful conspiracy and combination to fix prices at unreasonably low and/or predatory levels and to dump product' in restraint of trade." (Dkt. # 40, Pg. ID 440 (quoting Dkt. # 1, Pg. ID 30-31).) The court held that Plaintiff failed to state a claim under § 1 of the Sherman Act and MARA because Plaintiff failed to allege a dangerous probability of recoupment and, therefore, did not adequately allege antitrust standing. *See NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (en banc) ("[A]ntitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement we must dismiss it as a matter of law—lest the antitrust laws become a treble-damages sword rather than the shield against competition-destroying conduct that Congress meant them to be.").

In its motion for reconsideration, Plaintiff attempts to reargue that "recoupment is not required to plead antitrust injury in the instant Section 1 case," insisting that the court erroneously interpreted Supreme Court cases which established that recoupment must be alleged in predatory lending cases brought pursuant to § 2 of the Sherman Act

2

to also require recoupment in predatory lending cases brought pursuant to § 1 of the Sherman Act. (Dkt. # 42, Pg. ID 459-60.) However, the court did not hold in its previous order that Supreme Court precedent had explicitly established that a plaintiff alleging predatory pricing under § 1 of the Sherman Act was required to allege recoupment in order to state a claim; rather, the court found that "[t]he logic for such a requirement applies with equal force to claims brought under § 1 or § 2." (Dkt. # 40, Pg. ID 449.)

In so finding, the court relied on *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993), in which the Supreme Court explained that below-cost pricing without recoupment—"unsuccessful predation"—would generally be a boon to consumers. (*Id.*) The Supreme Court reasoned:

> Recoupment is the ultimate object of an unlawful predatory pricing scheme; it is the means by which a predator profits from predation. Without it, predatory pricing produces lower aggregate prices in the market, and consumer welfare is enhanced. Although unsuccessful predatory pricing may encourage some inefficient substitution toward the product being sold at less than its cost, unsuccessful predation is in general a boon to consumers.

*Brooke Grp. Ltd.*, 509 U.S. at 224.

Additionally, in a parallel argument, Plaintiff insists that it demonstrated antitrust injury in the form of loss of consumer choice and innovation because, as a result of Defendants' conduct, "at least twelve domestic manufacturers have been shut down and ten domestic companies have been forced out of business, some of which offered alternative products to those offered by Defendants." (Dkt. # 42, Pg. ID 462.) This is just another way of arguing that Plaintiffs need not allege recoupment to state a claim of an unlawful predatory pricing scheme in violation of § 1 of the Sherman Act. The court

rejected this argument in its previous order.  (*See* Dkt. # 40, Pg. ID 445-46 ("[The complaint] asserts that 'Defendants directly harmed competition in the United States for commercial and industrial rooftop solar panels by reducing consumer choice, stifling innovation, drastically undercutting solar panel prices, and forcing a substantial part of American production into bankruptcy.'  However, unreasonably low and/or below-cost pricing does not harm competition and, thereby, confer antitrust standing [without recoupment].").)

The Sixth Circuit recently recognized the similarities between § 1 predatory pricing schemes that involve only concerted action and § 2 predatory pricing schemes that involve monopolization.  *Cf. Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 190 (2010) ("Section 1 applies only to concerted action that restrains trade. Section 2, by contrast, covers both concerted and independent action, but only if that action monopolize[s], or threatens actual monopolization . . . ." (internal quotation marks and citations omitted)).  On April 22, 2015, after the court entered the order dismissing Plaintiff's complaint, the Sixth Circuit decided *Superior Production Partnership v. Gordon Auto Body Parts Co.,* 784 F.3d 311 (6th Cir. 2015).  In *Superior Production Partnership*, the plaintiff filed antitrust claims pursuant to § 1 and § 2 of the Sherman Act alleging that the defendants engaged in an illegal predatory pricing scheme.  *Id.* at 316. The Sixth Circuit acknowledged that "[t]he law on predatory pricing claims under § 2 is significantly clearer" than under § 1 claims and set forth the prerequisites for liability under § 2, including establishing a dangerous probability of recoupment.  *Id.* 318.  The Sixth Circuit then addressed the elements of a § 1 predatory pricing claim, stating:

> Courts have rarely addressed the application of § 1 to the scenario before us.

4

*Matsushita* [*v. Elec. Indus. Co., Ltd.*, 475 U.S. 574 (1986)], undoubtedly the leading case, declared single-firm predatory pricing generally implausible and a conspiracy to charge predatory prices even more so. 475 U.S. at 589–91. But *Matsushita* did not make it entirely clear if § 1 liability required a showing of prices below some "appropriate" level of cost, as in *Brooke Group*. *See Matsushita*, 475 U.S. at 584 n. 8 (noting that, for that particular case, the Court would view the threshold as either "(i) pricing below the level necessary to sell [plaintiff's] products, or (ii) pricing below some appropriate measure of cost" without deciding if those tests applied to future cases). Nor did *Matsushita* expressly lay out a recoupment requirement.

Nonetheless, we think it best to infer these same elements in a § 1 predatory pricing claim. *Matsushita* clearly considered both below-cost pricing and the likelihood of recoupment to impact, if not fully determine, the plausibility of a predatory pricing conspiracy. *See id.* at 590–91. And whether predation and recoupment are merely considerations that inform the plausibility of inferring an agreement, as [Plaintiff] suggests, or are formally independent requirements beyond a § 1 agreement and antitrust injury, as [Defendants] argue[], is a technicality we need not address here. Either way, a plaintiff must grapple with these concepts in proving its case under § 1.

*Id.* at 320.

While the Sixth Circuit came short of identifying a dangerous probability of recoupment as a necessary element for establishing a predatory pricing scheme in violation of § 1 of the Sherman Act, the Circuit's reasoning acknowledges the similarities between § 1 and § 2 predatory pricing schemes. *Superior Production Partnership*, thus, bolsters the court's holding dismissing Plaintiff's complaint.

Plaintiff next contends that Defendants need not plead recoupment because Defendants "are not motivated by rational economic principles but rather full employment." (Dkt. # 42, Pg. ID 472.) This argument is unavailing. As an initial matter, Plaintiff did not raise this argument in its opposition to Defendants' motion to dismiss, and "[a] motion for reconsideration is not properly used as a vehicle to . . . advance positions that could have been argued earlier but were not." *DiPonio Const.*

5

*Co. v. Int'l Un. of Bricklayers & Allied Craftworkeres, Local 9*, 739 F. Supp. 2d 986, 1004-05 (E.D. Mich. 2010).  Second, Plaintiff cites to no authority supporting its contention that recoupment would not be necessary to establish an antitrust injury where a predatory pricing scheme is motivated by the desire to maintain full employment.  As stated above, artificially low pricing unaccompanied by recoupment "is in general a boon to consumers."  *Brooke Group Ltd.*, 509 U.S. at 224.  Third, the complaint does not allege that Defendants are not motivated by rational economic principles, as Plaintiff now argues.  The complaint states, "Defendants' actions defied short term economic principles—instead of seeking profitability, Defendants sold their solar panels at any cost necessary to support full employment in the Chinese manufacturing facilities and handsome payments to their executives."  (Dkt. # 1, Pg. ID 4.)  However, it would not be surprising for a predatory pricing scheme intended to enhance long-term profits to appear to defy short term economic principles inasmuch as the defendants would choose to forgo profit until the recoupment phase of their scheme.  Alleging that Defendants' reductions in price "defied short term economic principles" is wholly consistent with a predatory pricing scheme motivated by rational economic principles.  Plaintiff acknowledges as much later in the complaint when it warns, "Finding themselves now able to manipulate the market with their newly achieved market power, Defendants can freely raise prices, coordinate output and distribution, and ensure employment in Chinese manufacturing facilities . . . ."  (*Id.*  at 18.)  Plaintiff has not demonstrated why a business decision motivated in part by the desire to maintain certain levels of employment would render the recoupment requirement inapplicable.  *Cf. Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173,

6

182 (Del. 1986) ("A board may have regard for various constituencies in discharging its responsibilities, provided there are rationally related benefits accruing to the stockholders.").

Last, Plaintiff contends that it has alleged a dangerous probability of recoupment, but these arguments are substantially similar to those addressed by the court in its previous order. (Dkt. # 42, Pg. ID 473) The court finds that Plaintiff has not alleged a dangerous probability of recoupment for the same reasons set forth in the order dismissing Plaintiff's complaint. (*See* Dkt. # 40, Pg. ID 450-52.) Namely, "[t]he complaint does not allege that Defendants intend to raise prices to, and sustain prices at, supracompetitive levels sufficient to recoup the losses (with interest) that were allegedly sustained as a result of below-cost pricing. The complaint merely states that, in light of Defendants' 80% market share, Defendants have the *ability* to raise prices to such a level."[1] (*Id.* at 451.)

In sum, Plaintiff has failed to demonstrate a palpable defect in the court's conclusion that Plaintiff was required to plead a dangerous probability of recoupment in order to state a claim of predatory pricing in violation of § 1 of the Sherman Act and in its conclusion that Plaintiff failed to do so.

---

[1]Notably, in its motion, Plaintiff emphasizes that Defendants' alleged predatory pricing scheme poses a barrier of entry into the solar panel industry which makes Defendants' recoupment plausible. (Dkt. # 42, Pg. ID 475-76.) This argument ignores the fact that the alleged barrier to entry—low prices—would abate were Defendants to begin recouping their alleged losses, as Defendants would recoup their losses by raising prices. But, even assuming Defendants' recoupment were plausible, the complaint does not allege a dangerous probability of recoupment, as the complaint does not allege any intention to raise prices to, and sustain prices at, supracompetitive levels.

## IV.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Plaintiff's Motion for

Reconsideration (Dkt. # 42) is DENIED.

 s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  August 20, 2015


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, August 20, 2015, by electronic and/or ordinary mail.

 s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522